Clerk, please call the next case. 3-0-9-0-8-1-7 RF Delta, Phillip Services v. Testing May it please the Court, just as an initial procedural matter, the facts of this case and the next case on your docket are exactly the same. And you have the next case? The lawyers are exactly the same. Both cases involved two gentlemen in the same vehicle whose car overturned on the interstate. So they were tried separately because the widows were different. But the facts and the law in the cases are exactly the same. So this is the driver and the passenger together? Yes. Both were killed in the same accident? Yes. So I see no reason not to, unless you guys really want to hear me present the same argument twice, I see no reason not to. I agree with you. I agree with you, counsel. Okay. Thank you. Everybody agrees? Fine. Yes. Thank you. My name is Bryn Holbrook. I'm here on behalf of RMF Delta Phillips Services on these cases of O'Neill and Kasten. As I just briefly stated, these are the two gentlemen that were working in Minnesota. We're driving back, presumably, to their home in Louisiana on I-39, west of La Salle, Peru. And I think that's west. And flipped their car and both of them died. The issues in dispute in this case, the issues that I have appealed upon, is whether these two gentlemen were employees at the time of their accident and whether the accident arose out of and in the course of their employment. First of all, I want to say that I agree with the commission that Chicago Bridge is the controlling precedent in this case. However, where I disagree with the commission is their application of the law of that case to this situation. Chicago Bridge stands for the proposition that all factors have to be taken into account when determining a party's employment status. This is on the issue of employment, I'm sorry. And that the most important factor in all cases on employment status is control. And we've got a number of cases that talk about that early, where Roberson, all those talk about this control issue. The commission, however, in our cases, failed to even mention control when discussing the issue of employment. Furthermore, the commission throws out the fact that Chicago Bridge says that the contract, the union contract, is not dispositive as a factor in determining whether there was employment or not. And I agree, it's not dispositive, and the cases agree with that. However, it should be considered, and rather than the commission dismissing it because Chicago Bridge says it's not dispositive, they should have looked at it. And clearly the union contract says that these gentlemen were hired the day they show up and start working, and they're terminated or laid off the day that they leave, that they're done. Why doesn't this case, when you cut to the chase, really turn on whether or not the relationship indicated that the company was compensating the decedent in O'Neill for their travel time to and from Minnesota? Well, and that's a fact. If it's an expense, as I understand the law, if it's reimbursement really for travel expenses, then they would not be considered to have been employees at the time. But since they were being paid on company time for their travel, that's the deciding factor, and that's different than Chicago Bridge. That is correct. But I would say that on that factor, Your Honor, the commission is incorrect as a manifest way to the evidence. The contract itself clearly states that the gentlemen were supposed to be paid $42 a day per diem that they worked. They worked 11 days. Math tells me that 42 times 11 is $462. I hope I did the math right without looking. That's exactly what they got paid. Okay? And I'm sorry. I addressed the wrong issue. You addressed the travel expense issue. Let me address that. That's a mathematical issue, too, Your Honor. The contract also said that they were supposed to be paid 31 cents a mile, or the contract said they were supposed to be paid the IRS tax-free rate. At the time of their accident, that was 31 cents a mile, and if you do MapQuest, they drove 1,000-and-some miles, and if you do the math on that, that's exactly what they got paid. All right. So what are you saying? You're saying that they were actually paid by the company for expenses, for mileage? Reimbursement. Not for their time. Exactly. The commission's decision on that issue is completely against the manifest weight of the evidence. There's absolutely no reason to think that the math I just quoted to you isn't right, because that's what the contract says. Well, maybe you're putting too much on the math, because the response to that would be how do you explain why the decedent and O'Neill were paid exactly the same amount, both to and from Minnesota, when the return trip home was much shorter than the fatal car accident? Yeah, and that's what the arbitration commission said, too. But I would also say that if they were paid on their time, the return home was a lot shorter, too, wasn't it, Your Honor? Maybe their mathematical computations are not good. Well, I'm just saying that if you're going to say they were cut short on the way home so they didn't travel as far, they also were cut short on their time on the way home because they didn't travel as far. All right. So what evidence, then, are you pointing to succinctly that establishes that they were this reimbursement was for travel expenses and not time? Because that's exactly what the contract said, and that's exactly what they paid them. It's exactly what the contract told them, so they had to pay. It's not really reimbursement because they didn't submit anything showing that they traveled a certain number of miles. They were just paid, right? Well, and you know what, Your Honor? There is no evidence of that, of what they might have submitted. You know, I went on that quest to find out what the distance was to see if the math worked out, and that's how I found out. And very well, maybe that's what the respondent did as well, or the appellant did as well in this case. I don't know that. But I do know that when I did the math, it was exactly the amount they got paid. When were those checks issued? The first check, you know, that's a good question. I believe one of the checks they may have actually got when they got there. The second one I know that the widows got at their home, the one for the drive back, the widows got at their home later. Had anybody submitted anything requesting, quote, unquote, reimbursement? No, Your Honor, but again, the union contract said it was mandatory that the employers who were signatories to the union contract pay that, pay the reimbursement for that. One thing I want to point out, again, when we get back to the employment issue, is controls aren't even mentioned by the commission. They don't even talk about the issue of control in their decision. If we examine that issue, it's pretty clear that there's no control existing over the workers after they were laid off. They were free to go anywhere they wanted to. In fact, if I can quote the dicta from Chicago Bridge, where it is a very different situation, they said in that case, now, let me back up and say why it's different. Chicago Bridge, the gentleman had worked exclusively for the same company for 19 years. And what had happened was he would be hired for a job, he'd go up and do the job, he'd be terminated, he'd go home, he'd be hired for another job for the same company for 19 years, okay? The court in that case looked through those facts and said, well, this is a fiction that he's not an employee. In fact, he is, because it's happened over and over and over. And in this court, Chicago Bridge said a different result may have been obtained if the claimant had never worked for the employer prior to the Illinois cover conversation or if he had regularly worked for others during the 19-year period. That's the dicta of this court. That's our situation. He had worked. They had worked for different employers. We know that they'd worked for us once in the past because there was checks for that. But that's the only time we know about. So this is very different than Chicago Bridge on that issue. Let's talk about the not arising out of in the course of issue as well. Now, the general rule is traveling, employees traveling to and from work are not arising out of in the course of employment. If I, my train wrecks on the way home today, I'm not in the course of my employment. That's not arising out of in the course of my employment. Unless your firm is going to pay you for your traveling time. And we'll get to the exceptions. You're absolutely correct, sir. There are exceptions. Okay? And those are what the commission addressed and what I will address. All right. The first exception is if the course or method of their travel is determined by the demands of their job. That's not the case here. The commission didn't even say that. The second one is if the employer agrees to compensate the employee for time spent traveling to confirm to or from work and not for reimbursement. And again, the same argument that I've already addressed, the math tells me that it was for reimbursement because that's what the contract said we were supposed to do is reimburse them, and that's what we did per the exact math. Did you make that argument before the arbitrator? I did. The commission? I did. Now, and I've already addressed it. So the arbitrator's two findings about that issue I think are not only against the manifest way to the evidence, but actually kind of laughable. One of the things the arbitrator says it must be for time because they only used one car. So why would they both get reimbursement? Well, we don't know where these people are coming from. We call the union, send us two people. We're doing it anyway if it's only one car. Well, then why would they both get reimbursement if only one of them is driving the car? But we didn't know that. We couldn't know that. We just know two men showed up and reimbursed both of them per the contract. That's what the arbitrator said was there was only one car, so that makes a big difference on the reimbursement issue. But, Willie, isn't that significant? You're going to give a money. Somebody's having mileage. Somebody's using a car. Somebody's paying gas. Why would you give the passenger the same mileage as you give the person who's driving and owns the car? It doesn't make any sense. And if you knew that, Your Honor, you wouldn't. But there's no evidence that the respondent knew that.  I agree that that may be something that the employer employment law people should have negotiated when they did the contract. But that's what the contract says. The contract says that any employee that shows up, they've got to pay them reimbursement for showing up, however far they went. So, in other words, what you're saying is the contract requires that each of the employees be, quote, unquote, reimbursed. Right. For travel expenses, whether they have any travel expenses or not. I don't know if it says whether they have any travel expenses or not. That's the part that's left out. Isn't that the practical effect of it? You're saying this company's policy, it doesn't make a lot of sense because whether they have expenses or not, they're going to get a certain amount of money? That sounds more like being paid for time than expenses. No. I would disagree with you on that, Your Honor. Companies just give mileage to everybody, no matter whether they're driving or not? Interesting. And then I already addressed the issue about the abrupt end. I don't think that makes any sense at all, because clearly they didn't travel as far in time as well as distance. So to argue that that shows that they traveled as far, that they were paying them for it, doesn't make any sense. Because their time would have been shorter, too. All right. The third example, and the one that I want to get to that, again, is addressed in Chicago Bridge, is that a traveling employee is an exception to the travel is not arising out of the course of. And that is if someone is required to travel away from the employer's premises in order to perform a job. Now, according to Wright, the key factor is the reasonableness and foreseeability of the activity that the employee was involved in. And it's very apparent in Chicago Bridge that they found the worker was a traveling employee that they relied upon in that case. The long-term relationship between the parties defined that his trip to the location was foreseeable and reasonable. And in Chicago Bridge, again, there's dicta in there that supports my position that this is different. The situation is addressed in the dicta. In oral arguments, both parties agreed that if the claimant never worked for the employer prior to receiving the call, he would not be a traveling employee. We agree. Conversely, if the claimant had not been terminated from the payroll after each travel, there would have been little difficulty characterizing him as a traveling employee. So in this case, you're saying this was his first employment with this company. It's the second one. So I can't say that it's the first one, but it's the second one. But what is different is in Chicago Bridge, we have someone who worked exclusively for one company for 19 years. They would hire him and fire him, hire and fire him, hire and fire him. And the court clearly in that case said he's your employee when he's traveling up there because he expects to have a job when he gets there. It's a different situation, and that's what they talk about in Chicago Bridge. So you're saying you cannot be a traveling employee as a matter of law for more than one employer. No, I'm not saying that. You seem to be saying that it excluded him because it was the first or second time. He wasn't doing this on a regular basis. What I'm saying is what the court did in Chicago Bridge is said that he relied upon the fact that this had always worked this way before, that there was going to be a job for him up there, and that that was a sign of control on him by the respondent, by the employer in that case, and therefore that is why he was a traveling employee. So how many times does somebody have to be working for a company before they would be considered to be a traveling employee? Less than 19 years exclusively one employer, but more than two, Your Honor. But I can't tell you how many. But you have no case law that supports that. No, I don't, other than the dicta in this case, no. Did they receive the same amount of money to go to Minnesota and to return to Louisiana? Yes, they did. And they went for an hour and a half? I don't know how long it is from Pine Bay, Minnesota to... They sure didn't go the whole trip back? No, they did not, no. Where would they get paid for that? Well, that's my question, too. If you were paying them for time, why would they get paid for that? That's why I'm saying... They did pay. Yes, because I believe that the contract required us to pay it as reimbursement. Thank you, Your Honor. Thank you. Counsel, please. Good afternoon. My name is Rand Hale. I represent the widows of Mr. Kastin and Mr. O'Neill with reference to this case. Our contention is, is that the employer's got to show that the arbitrator's decision was against, or the commission's decision was against the manifest weight of the evidence. You just can't ask them to re-weigh the factors that the arbitrator weighed, which is what they're, in effect, asking the court to do. And I would then contend that they haven't shown that the decision was against the manifest weight of the evidence. When the arbitrator... Could you address what seems to be sort of a logical point he's making, is that if you do the math on the mileage, it turns out, coincidentally, to equal the mileage. He argues that that is evidence of the fact that this is reimbursement for travel expenses, not for time. How do you respond to that? My response is that it is not that, because when we look at this particular situation, they were paid the same for both going and coming. And one additional factor, we talked about the fact that's what the union contract says. And what about the two guys in the one truck? Well, they didn't know about that, because that's what the contract says. Certainly the employer knew about that after they left, because they saw them there in the one truck. So that is something that they knew, and they continued to pay the amount that was there. Our contention is, is that's payment for time spent traveling, as opposed to mileage or anything else. Otherwise it sort of defies laws that your company is going to give money to somebody who's not, for mileage, who's not driving. That's right. That would be our contention. The arbitrator, when they talked about What about the instructions to treat this, if I've understood opposing counsel correctly, to treat this on an income tax basis for mileage reimbursement? I'm not sure. Maybe that was a question of hypotheticals. There's nothing in the record directing the employees or these two decedents as to how to treat this payment from the employer? The payment was received by the widows after the accident occurred and was not received by them before. And I believe it was included in the income that they received. Oh, okay. I believe it was. Okay, so it was included. Yes. And as counsel indicated, there was another employment during the calendar year for these gentlemen at the same place up in Minnesota from where they went to. So this isn't the first time that they went there. So that kind of fits into the dicta in the Chicago Bridge case, because this isn't an isolated incident, because they've been to this place before during this calendar year. Arbitrator concluded that the individuals were traveling employees, and the important thing that they looked at there was not a question of control, but they looked at a question of foreseeability. And it was clear from the route that they were taking they had one more right turn before they were on I-55, which takes you all the way to Louisiana. So they were clearly on their way home, and that's something that would be foreseeable because of the nature of their employment. Were these two gentlemen traveling employees? I'm sorry? Were they traveling employees in your opinion? Yes. Why? Because it is clear when you look at what we talk about here, they were employees who traveled to a distant job. The employers know that they were traveling to a distant job, and it's foreseeable that they're going to come from the location of their residence to work there, and they're going to go back there. And under the Wright case, the Supreme Court said that if the travel is foreseeable, that there should be then, that they would be termed to be a traveling employee. So you don't accede to opposing counsel's argument that there has to be some kind of a history, and more than once or twice would be required? No. I believe there was a history, and they did go to this place before. That makes them a traveling employee, even fitting under the dicta in the Chicago Bridge case. And I would also contend, as has been talked about previously, that the other rule that they talk about in the Chicago Bridge talks about the fact that an exception to the rule occurred where the employer agreed to compensate the employee for time spent. Our contention is that the payment for, quote, mileage, end quote, was payment for time spent. So thus, they would be deemed to be in the course of their employment as a result of that factor also. Does the employment contract refer to it as transportation costs? It is referred to in the employment contract, yes. Is transportation cost on a per mile basis? I believe that it is, yes. Okay. But our contention is that they haven't shown that the commission's decision was against the manifest weight of the evidence, and we would contend it should be affirmed. Mr. Powell? Just two things. First of all, I think that not only are there findings by the commission either against the manifest weight of the evidence, which we've talked about and argued about, I also believe that the commission did not correctly apply Chicago Bridge, that they did not look at the factors that they're supposed to look at. If you look at the commission's decision, they don't mention control in there anywhere. And that is the most important factor when determining if someone is an employee. So I want to point that out. The second thing that I would like to say, brought up by esteemed justice over here, is that the IRS reimbursement rate isn't something that generally people do terminate expenses for. When I drive to Ottawa for cases like this one, I drive 160 miles and I ask for the reimbursement rate back. It didn't cost me, it's 50 cents a mile now, it didn't cost me $80 to drive to Ottawa, Illinois and back and gas or anything. But that's what the reimbursement rate is that the IRS says that I can have. So the suggestion earlier was, well, this isn't really reimbursement because they're not showing what their costs were. That's not the way it works with the IRS reimbursement rate. Thank you. Thank you, counsel. The court will take the matter in writing.